**OREGON ASSOCIATION OF HOMES FOR THE AGING, INC., et al., Plaintiff,**

v.

**STATE OF OREGON, By and Through its DEPARTMENT OF HUMAN RESOURCES, SENIOR AND DISABLED SERVICES DIVISION, et al., Defendants.**

**OREGON HEALTH CARE ASSOCIATION, an Oregon corporation, et al., Plaintiffs,**

v.

**STATE OF OREGON, By and Through its DEPARTMENT OF HUMAN RESOURCES, SENIOR AND DISABLED SERVICES DIVISION, et al., Defendants.**

Civ. Nos. 90–6494–JO, 93–1598–JO.

United States District Court, D. Oregon.

Oct. 21, 1994.

**384**

Jody Ann Noon, Davis Wright Tremaine, Portland, OR, William Altman, Laura Oberbroeckling, Mark J. Biros, Proskauer Rose Goetz & Mendelsohn, Washington, DC, for plaintiffs Oregon Ass'n of Homes for the Aging, Inc.; Presbyterian Nursing Home, Inc.; Mercy Care Center Benedictine Nursing Center; Lutheran Homes & Hospitals, Inc.; Oregon Health Care Ass'n.

Jacob B. Tanzer, Phillip E. Joseph, Ball Janik & Novack, Portland, OR, Mark J. Biros, Proskauer Rose Goetz & Mendelsohn, Washington, DC, for plaintiff Oregon Health Care Ass'n; Mt. St. Joseph Residence & Extended Care Center.

Eric James Bloch, Dept. of Justice, Salem, OR, for defendants State of Oregon; James Wilson, Director, Senior and Disabled Services Division; Kevin W. Concannon, Director.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This matter is before the Court on Defendants' (State of Oregon and Department of Human Resources) Motion to Reconsider and Vacate (166–1) and Plaintiffs' (OAHA and OHCA) Motion for a Preliminary Injunction (169–1).

Defendants move for reconsideration of the Court's decision on July 12, 1994 to grant in part and deny in part Defendants' motion to dismiss Plaintiffs' fifth amended complaint. Specifically, Defendants challenge the Court's reasoning regarding its finding of an implied private right of action under the Boren Amendment.[1] Opinion and Order, July 12, 1994, at 4–6. Defendants' motion for reconsideration is GRANTED. On reconsideration, the Court's opinion regarding Defendants' motion to dismiss claims for retrospective relief (Opinion and Order at 4–6) is Vacated and replaced by the opinion set forth below.

## ARGUMENTS

### I. Defendants' Contentions

In contrast to several months ago, Defendants now argue that a private right of action does not exist under the Boren Amendment. *See* Def.'s Mem. Supp. Mot. Vacate at 2–3.[2] In support of that argument, Defendants explained that Congress did not intend to provide a private right of action under the Boren Amendment because the "text of the Boren Amendment is silent on the issue of private causes of action to enforce its terms, as is the legislative history." Defs.' Mem. Supp. Mot. Vacate at 5.

Defendants further contend that to create an implied cause of action which permits

---

1. The Amendment provides in part:

"a State plan for medical assistance must * * * * provide * * * for payment * * * of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State * * *) which the State finds, and makes assurances satisfactory to the Secretary, *are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards* and to assure that individuals eligible for medical assistance have reasonable access * * * to inpatient hospital services of adequate quality * * *." 42 U.S.C.A. § 1396a(a)(13)(A) (Supp.1994) (emphasis added).

2. In response to Defendants notation that they were not required to have "earlier raised the issue of Plaintiffs' lack of a private right of action," Defs.' Mem. Supp. Mot. Vacate at 4, the court's concern is based upon Defendants' representations that Plaintiffs were not entitled to a preliminary injunction because they had an adequate remedy at law for damages directly under the Boren Amendment. After Plaintiffs withdrew their request for a preliminary injunction in reliance on Defendants' arguments, Defendants have now (albeit within their legal right) reversed their position, requiring review of issues litigated in June of this year. In the future, Defendants are advised to carefully choose their arguments and not make assertions to this court which mislead this complicated litigation.

retrospective relief against the State would impermissibly contravene a state's Eleventh Amendment immunity by subjecting the state to suit without "unmistakably clear" congressional action. *Id.* at 7–8 (citing *Will v. Michigan State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)).

Lastly, Defendants argue that the State's waiver of Eleventh Amendment immunity should not affect the Court's decision regarding the existence of an implied right of action for retrospective relief under the Boren Amendment which would disregard the Eleventh Amendment. *Id.* at 8–10. Therefore, Defendants urge the Court to conclude that a private right of action does not exist under the Boren Amendment.

## II. Plaintiffs' Contentions

In rebuttal, Plaintiffs argue that abrogation of the Eleventh Amendment is not "relevant to a determination as to whether Congress intended to create a cause of action under the Boren Amendment." Pls.' Mem. Opp. Mot. Vacate at 5–6. Moreover, Plaintiffs' admit that the Boren Amendment does not alter the State's Eleventh Amendment immunity because creating a private right of action does not prevent the State from asserting its Eleventh Amendment immunity. *Id.* at 6. However, Plaintiffs stress that in this case the State waived its immunity and thus subjects itself to suit under the Boren Amendment for retroactive damages. *Id.* at 6–8. Lastly, Plaintiffs reassert their entitlement to injunctive relief if money damages are not available under the Boren Amendment. *Id.* at 11–12.

3. Furthermore, Defendants do not dispute, and the Court finds, that factors 1, 3, and 4 of the *Cort* test are satisfied here: first, the Medicaid statute was enacted in part for the benefit of health care providers; second, finding an implied right of action is consistent with the mandatory statutory scheme; and third, the implied cause of action is not one traditionally relegated to state law.

4. The Supreme Court's statements in *Thompson v. Thompson,* are instructive: "In determining whether to infer a private cause of action from a federal statute, our focal point is Congress' intent in enacting the statute. As guides to discerning that intent, we have relied on the four factors set out in *Cort v. Ash,* [citations omitted], along with other tools of statutory construction. [Citations omitted]. Our focus on Congressional intent

## DISCUSSION

The court considers four factors in determining whether a private right of action may be inferred from a federal statute:

1) Is the plaintiff a member of the class for whose *especial* benefit the statute was enacted?

2) Is there any indication of legislative intent, implicit or explicit, to create or deny such a remedy?

3) Is the implication of such a remedy consistent with the underlying purposes of the legislative scheme?

4) Is the cause of action sought to be implied in an area not traditionally relegated to state law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). However, "the most important inquiry here * * * is whether Congress intended to create the private remedy sought by the plaintiffs." [3] *Suter v. Artist M.,* 503 U.S. 347, 364, 112 S.Ct. 1360, 1370, 118 L.Ed.2d 1 (1992); *See also Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988).[4] In its task of statutory construction, the court examines three facets of the statute: (1) the language, (2) the structure, and (3) the legislative history. *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 91–94, 101 S.Ct. 1571, 1580–82, 67 L.Ed.2d 750 (1981).

## I. The Language Of The Boren Amendment

In *Wilder v. Virginia Hospital Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990), the Supreme Court recognized that

does not mean that we require evidence that Members of Congress, in enacting the statute, actually had in mind the creation of a private cause of action. The implied cause of action doctrine would be a virtual dead letter were it limited to correcting drafting errors when Congress simply forgot to codify its evident intention to provide a cause of action. Rather, as an *implied* cause of action doctrine suggests, 'the legislative history of a statute that does not expressly create or deny a private remedy will typically be equally silent or ambiguous on the question.' [citations omitted]. We therefore have recognized that Congress' 'intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment.' [Citations omitted]" *Id.* at 179, 108 S.Ct. at 516.

**386**

the Boren Amendment is "cast in mandatory rather than precatory terms: the state plan '*must*' 'provide for payment * * * of hospital[s]' according to rates the State finds are reasonable and adequate." *Id.* at 512, 110 S.Ct. at 2519 (citing 42 U.S.C. § 1396a(a)(13)(A)).[5] " 'The [Boren Amendment's] language succinctly sets forth a congressional command, which is wholly uncharacteristic of a mere suggestion or 'nudge.' '" *Id.* (quoting *West Virginia University Hospitals, Inc. v. Casey,* 885 F.2d 11, 20 (3rd Cir.1989) (quoting *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981)), *cert. granted,* 494 U.S. 1003, 110 S.Ct. 1294, 108 L.Ed.2d 472 (1990)). The Boren Amendment's compulsory language undeniably supports the notion of a private right of action to enforce substantive rights.

## II. The Structure Of The Medicaid Act

■ As discussed above, the Boren Amendment commands States to provide reasonable and adequate reimbursement rates to facilities that provide quality care to Medicaid patients. However, the Medicaid Act fails to provide a comprehensive remedial scheme to address violations of section 1396a(a)(13). *Wilder* at 521–23, 110 S.Ct. at 2524. Therefore, the Boren Amendment confers enforceable substantive rights, *Id.* at 508–10, 110 S.Ct. at 2517, but fails to furnish a means to enforce those rights. The absence of judicial or federal administrative review in the Medicaid Act for the State's failure to comply with the Boren Amendment

---

5. This Court acknowledges that the test applied in *Wilder* is less burdensome than the *Cort* test, and thus the *Wilder* decision is not dispositive in this case. Nevertheless, the Supreme Court's review of the Boren Amendment is relevant to the present analysis.

6. The regulations implementing the Boren Amendment also support this view. For example, 42 C.F.R. § 447.256(b) (1993) provides that if the Secretary fails to approve or disapprove a State's reimbursement plan within 90 days, the plan will be deemed to have been accepted.

7. The *Michigan Hospital* court recognized the difference between federal defendants and state defendants:

indicates a Congressional intent not to foreclose alternative remedies. *See, e.g., Wright v. Roanoke Redevelopment & Housing Authority,* 479 U.S. 418, 427–29, 107 S.Ct. 766, 772–73, 93 L.Ed.2d 781 (1987).

■ Although § 1983 provides an avenue to procure prospective relief from actions of State officials, § 1983 does not permit retrospective relief against the State, regardless of whether the State waives its Eleventh Amendment immunity. *Will v. Michigan State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (holding that States are not "persons" as defined by the Civil Rights Act). Therefore, § 1983 merely supplies a partial remedy for Boren Amendment violations, which may be augmented by a private right of action.

■ Furthermore, District Court opinions which reject a private right of action against the Secretary of Health and Human Services are consistent with this approach. *See, e.g., Michigan Hosp. Assn. v. Dept. of Social Services,* 738 F.Supp. 1080 (W.D.Mich.1990); *Illinois Health Care Assn. v. Suter,* 719 F.Supp. 1419 (N.D.Ill.1989). The Boren Amendment envisions limited oversight by the Secretary, *Wilder* at 516–17, 110 S.Ct. at 2521,[6] and " 'places the responsibility for the development of reasonable and adequate payment rates with the States.' " *Id.* at 507, 110 S.Ct. at 2516 (quoting 48 *Fed.Reg.* 56047, 56050 (1983)). Therefore, the structure of the statute indicates that the State, not the Secretary, is the party accountable for inadequate or unreasonable reimbursement rates. Accordingly, private rights of action may lie against the State, even though the Secretary is not a proper defendant.[7]

---

Plaintiffs urge me not to follow the lead of *Illinois Health Care,* pointing to a recent decision in *Folden v. Washington State Dept. of Social & Health Services,* No. C87–802TB, 1989 WL 159586 (W.D.Wash.1989) which holds that a private cause of action against a state arises under the Boren Amendment. However, I find *Folden* much less persuasive that (sic) *Illinois Health Care. Folden* holds only that a cause of action arises against a *state,* not the Secretary of HHS, or HHS itself, and *Folden* bases this holding on a reading of * * * *Will,* which narrows the application of § 1983 to prospective relief. I do not find this persuasive on the issue at hand; I am not deciding the question of whether a private cause of action against a *state* arises under the Medicaid Act, but am deciding if one can be

■ As discussed, the structure of the Medicaid Act, as well as judicial interpretations of the Act, fail to remedy monetary losses incurred by health care providers where States refuse to reimburse health care facilities at "reasonable and adequate" rates. For this reason, the structure of the Act requires a means to fully recompense violations of substantive rights created by the Boren Amendment.

### III. Legislative History Of The Boren Amendment

Admittedly, the legislative history provides little guidance on the issue of whether the Boren Amendment creates an implied right of action. The Committee on the Budget for the 97th Congress explained that the Boren Amendment replaced the "reasonable cost" standard thereby providing States with more flexibility to set their own rates for reimbursing health care facilities. H.R.REP. No. 158, 97th Cong., 1st Sess., pt. 2, at 292 (1981).[8] However, the Committee also expressed its deep concern that States not use this added flexibility to unduly lower rates:

> The Committee believes the payment levels should be set at a level that ensures the active treatment of Medicaid patients in a majority of the hospitals available in the State. The Committee would be extremely concerned to see a substantial reduction in hospitals' willingness to treat Medicaid patients as a result of payment policy changes.

*Id.* at 293.

■ These observations by the Committee suggest that the State was responsible for setting its reimbursement rates, but it was imperative that reductions in payments not discourage health care providers from accepting Medicaid beneficiaries: "the Committee does not want such policies to result in arbitrary and unduly low reimbursement levels for hospital services." *Id.* at 294. Therefore, Congress' concern, regarding

State adoption of inadequate rates supports the determination that an intent exists to provide health care facilities with a private right of action under the Boren Amendment to insure that rates are not "arbitrary and unduly low."

### IV. Conclusion

For the reasons discussed above, this court finds, according to the factors set forth in the *Cort* test, that Congress intended to create a private right of action under the Boren Amendment. Therefore, Plaintiffs are entitled to proceed directly under the Boren Amendment for retrospective relief.

■ Though the Eleventh Amendment bars the award of retrospective relief for violations of federal law that would require payments from the state treasury, the State may waive its Eleventh Amendment protection when " 'stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Edelman v. Jordan,* 415 U.S. 651, 673–77, 94 S.Ct. 1347, 1360–63, 39 L.Ed.2d 662. Both parties agree, and this Court finds, that the State has unequivocally waived its Eleventh Amendment immunity; therefore, retrospective relief is appropriate.[9]

Because this court finds that money damages are available directly under the Boren Amendment, it is not necessary to address Plaintiffs' Motion for a Preliminary Injunction. However, should Plaintiffs' claims for damages under the Boren Amendment become unavailable, I will evaluate the arguments submitted and revisit the issue of whether a preliminary injunction is appropriate.

---

implied against the *federal* defendants, two very separate questions.

738 F.Supp. at 1086 (Emphasis added).

8. The Committee wrote, "[i]f freed from the reasonable cost reimbursement criterion, States would likely develop hospital reimbursement systems which would incorporate tests of efficiency and prudent buyer requirements, and thereby lower costs." *Id.*

9. I emphasize that this holding does not alter the well-established principle that "the Eleventh Amendment bars suits [in federal court against the State] unless the State has waived its immunity * * * or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will,* 491 U.S. at 66, 109 S.Ct. at 2309–10 (citing *Welch v. Texas Dept. of Highways and Public Transportation,* 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)).

IT IS ORDERED, Defendants' Motion To Reconsider and Vacate (166–1) is GRANTED. The Opinion expressed above replaces pages 4–6 of this Court's Opinion dated July 12, 1994. Plaintiffs' Motion For Preliminary Injunction (169–1) is NEITHER GRANTED NOR DENIED at this time.